ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL XI- ESPECIAL

| CCVS, INC.<br><br>Recurrida<br><br>V.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Peticionaria | KLCE202400710 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2018CV04322<br><br>Sobre: Injunction – Clásico, Seguros, Incumplimiento Aseguradoras Huracanes Irma / María |
| --- | --- | --- |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero.

*Martínez Cordero, jueza ponente*

### RESOLUCIÓN

En San Juan, Puerto Rico, a 20 de agosto de 2024.

Comparece One Alliance Insurance Corp. (en adelante One Alliance y/o parte peticionaria) mediante un recurso de *Certiorari* para solicitarnos que dejemos sin efecto la *Resolución* emitida el 26 de febrero de 2024, y notificada al día siguiente, por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI o foro primario).[1] Mediante la *Resolución* recurrida, el TPI eliminó los informes infrarrojos, tanto el preliminar como el final, preparados por el Ingeniero Juan Goyco Graziani (en adelante, Ing. Goyco Graziani), así como su testimonio en esa parte de los procedimientos. Igualmente, excusó al referido ingeniero de comparecer a los señalamientos futuros y dio por probado el informe pericial de la parte demandante con relación a los daños del techo. En cuanto a dicha *Resolución,* se presentó una solicitud de

---

[1] Apéndice del recurso, a las págs. 95-100.

Número Identificador

RES2024 _____

reconsideración, la cual fue denegada mediante *Resolución* emitida y notificada el 30 de mayo de 2024.[2] En la misma, el foro primario sostuvo la determinación previamente emitida.[3]

Por los fundamentos que expondremos, se *deniega* la expedición del auto de *Certiorari.*

I

La acción del título comenzó el 13 de junio de 2018, cuando CCVA, Inc. (en adelante, CCVA y/o parte recurrida) presentó una *Demanda* sobre sentencia declaratoria, *injunction* y daños en contra de la aquí peticionaria.[4] Esencialmente, alegó que a consecuencia del Huracán María sobrellevó daños a su estructura física que sobrepasaban la suma de $11,000,000.00 dólares, y que su negocio sufrió pérdidas que excedían la cantidad $728,998.00 dólares. Afirmó que durante ese tiempo tenía una póliza de seguro emitida a su favor por One Alliance con el número 75-28-000001234-0, la cual cubría daños estructurales y pérdidas de ingreso ocasionadas por un huracán. Según surge de las alegaciones, el 6 de noviembre de 2017, los ajustadores públicos de CCVA presentaron una reclamación a One Alliance, la cual fue recibida el 9 del mismo mes y año. En vista de ello, el 5 de marzo de 2018, One Alliance, presuntamente, le envió un adelanto de $250,000.00 dólares. Sin embargo, aseveró que la referida cantidad no se acercaba a cubrir las pérdidas sufridas, y que One Alliance incumplió con el Código de Seguros, el cual, impone a las compañías aseguradoras un término de noventa (90) días para investigar, ajustar y resolver una reclamación. Al amparo de lo expuesto, le solicitó al foro primario que emitiera una sentencia declaratoria estableciendo, en suma, que CCVA tiene derecho a recibir el pago por las pérdidas

---

[2] Apéndice del recurso, a las págs. 164-165.
[3] *Íd.*
[4] *Íd.,* a las págs. 1-11.

reclamadas, y que One Alliance incurrió en violaciones al Código de Seguros y en prácticas desleales en el ajuste de sus reclamaciones. Además, en lo pertinente, peticionó que, por medio de un remedio interdictal, se le ordenara a One Alliance a abstenerse de continuar incurriendo en violaciones al Código de Seguros y su reglamento, en perjuicio suyo. Finalmente, le suplicó al foro primario que condenara a la parte apelante a pagarle, además de las cantidades reclamadas, la suma de $1,000,000.00 dólares, por los daños y gastos, alegadamente, sufridos al negarse la compañía aseguradora a pagar las pérdidas sobrellevadas, más una suma en pago de las costas de la litigación, intereses y honorarios de abogado.

El 13 de agosto de 2018, One Alliance contestó la demanda.[5] En el escrito, afirmó no haber incurrido en violaciones al Código de Seguros, puesto que, luego de recibir la reclamación formal por parte del ajustador público de CCVA, consultó a los expertos necesarios, entre estos, los ingenieros Goyco Graziani y Emilio J. Solís (Ing. Solís), para ajustar y pagar los daños cubiertos por la póliza expedida y ocasionados por el huracán. A esos efectos, el 19 de abril de 2018, presuntamente, le cursó a CCVA una oferta detallada por la suma de $1,927,210.60 dólares, a la cual se le debía restar el deducible correspondiente a $961,472.00 dólares y el adelanto de $250,000.00 dólares, lo cual dejaba un total a pagar de $715,753.60 dólares. Alegó que CCVA presentó la acción del título con mala fe y con el propósito de enriquecerse injustamente. A su vez, incorporó como defensas afirmativas los informes de los ingenieros antes reseñados, ya que, alegadamente, surgía de los referidos informes que los daños sufridos en el techo de la estructura se debían principalmente a su antigüedad y a la falta de mantenimiento, por

---

[5] Apéndice del recurso, a las págs. 12-52.

lo que eran pocos los daños que se le podían atribuir al Huracán María.[6]

Luego de varias incidencias procesales innecesarias pormenorizar entre los años 2018 a 2019, el 4 de agosto de 2022, se celebró la continuación de una *Vista* sobre aseguramiento de sentencia.[7] Durante la misma, fue llamado a testificar el Ing. Goyco Graziani. Surge de la minuta de esta *Vista*, que el licenciado Jaime Mayol Bianchi (Lcdo. Mayol Bianchi), representante legal de One Alliance, informó que el antedicho perito se iba presentar porque era experto en techos. Así las cosas, durante el contrainterrogatorio realizado al Ing. Goyco Graziani se reveló que este hizo un estudio infrarrojo en la estructura, el cual no surgía de su informe.[8] En vista de lo anterior, y a petición del licenciado Harold Vicente González (Lcdo. Vicente González), representante legal de CCVA, el foro primario ordenó a la parte peticionaria a que, en el término de diez (10) días, produjera el informe del antedicho estudio con todas las fotografías que se tomaron en el mismo.[9]

A tenor con lo transcurrido en la vista celebrada el 4 de agosto de 2022, mediante una *Orden* emitida ese mismo día, y notificada al día siguiente, el foro primario indicó lo que sigue:

> Según atendido en corte abierta, se ordena a la parte demanda entregar a la parte demandante como parte del descubrimiento de prueba, el estudio de infrarojo[10] que realizara el Ing. Goyco, tenga 10 días.[11]

Subsiguientemente, el 17 de agosto de 2022, CCVA incoó una *Moción para que se imp[usieran] las más severas sanciones, incluyendo la eliminación de las alegaciones por la deli[b]erada*

---

[6] Precisa señalar que, aunque los mencionados informes se unieron al presente recurso como presuntos anejos a la *Contestación a la Demanda*, surge del expediente electrónico del tribunal de instancia que los informes de los aludidos peritos no fueron adjudicados a dicho pliego. Véase, SUMAC, a la entrada 17.

[7] Véase, SUMAC, a la entrada 202.

[8] *Íd.,* a la pág. 3

[9] *Íd.*

[10] *Sic.*

[11] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 1-4. Véase, SUMAC, a la entrada 204.

*ocultación de evidencia.*[12] En el escrito, esgrimió que, en la *Vista sobre aseguramiento de sentencia*, celebrada el 4 de agosto de 2022, se reveló por primera vez que el Ing. Goyco Graziani había realizado un estudio infrarrojo y que había preparado un informe con sus resultados y hallazgos.[13] Puntualizó que, en cumplimiento con lo ordenado por el tribunal, por conducto de un correo electrónico del 12 de agosto de 2022, el Lcdo. Mayol Bianchi, representante legal de One Alliance, le remitió un documento intitulado "*Infrared Survey Report*" con fecha del 5 de febrero de 2018, preparado por el Ing. Goyco Graziani. No obstante, lo anterior, arguyó que One Alliance intencionalmente se reservó la realización del referido informe.

Para sustentar sus argumentos explicó que, como parte del descubrimiento de prueba, allá para el 23 de julio de 2018, le remitió a One Alliance un *Primer pliego de interrogatorios y requerimiento de producción de documentos* en el cual le solicitó copia de los informe rendidos por cada uno de los peritos y copia de cualquier investigación realizada; sin embargo, en respuesta a la antedicha solicitud, One Alliance únicamente proveyó un informe preparado por el Ing. Solís y un *Inspection Report* preparado por el Ing. Goyco Graziani con fecha del 26 de enero de 2018. Afirmó que, en la respuesta de One Alliance al interrogatorio, en ningún momento se mencionó la realización de un estudio infrarrojo. Por otra parte, alegó que esta no era la primera vez que One Alliance ocultaba evidencia. Sostuvo que la compañía aseguradora ocultó el informe emendado de los contadores públicos que contrató para comprobar la pérdida por interrupción de negocios. En vista de lo expuesto, le suplicó al tribunal de instancia que sancionara a One Alliance con

---

[12] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 5-72.
[13] *Íd.,* a la pág. 5.

la eliminación de sus alegaciones; o, en la alternativa, excluyera del juicio el testimonio del Ing. Solís y el Ing. Goyco Graziani.[14]

El 31 de agosto de 2022, One Alliance presentó una *Moción en oposición, réplica y solicitud.*[15] Esencialmente, aseveró que CCVA conocía del estudio infrarrojo desde la deposición que se le tomó al Ing. Goyco Graziani el 20 de noviembre de 2020.[16] Además, arguyó que, si en ese momento a CCVA le hubiese interesado obtener el referido informe, no se hubiera negado a proveérselo. A su vez, sostuvo que el aludido ingeniero testificó ante el foro primario que el estudio infrarrojo no fue concluyente para establecer los daños. Al amparo de lo anterior, le solicitó al tribunal de instancia que desestimara la solicitud de sanciones por frívola y temeraria, y peticionó que se condenara a CCVA a pagarle las costas, los gastos interlocutorios y honorarios de abogado.

En respuesta, el 21 de octubre de 2022, CCVA replicó a la oposición presentada por One Alliance. Arguyó que, aunque tenía conocimiento de que el Ing. Goyco Graziani había realizado un estudio infrarrojo, dado a que nunca se le remitió un informe pericial sobre el referido estudio, entendía que no se había preparado un informe. Por otro lado, adujo que era falsa la alegación sobre que CCVA no solicitó descubrir el aludido informe, puesto que se le

---

[14] Para sustentar su petitorio anejó a su moción lo siguiente: Anejo 1: correo electrónico suscrito por el Lcdo. Mayol Bianchi el 12 de agosto de 2022, y remitido al Lcdo. Harold D. Vicente, represente legal de CCVA, mediante el cual le envió el informe infrarrojo; documento intitulado *Infrared Survey Report performed for Atlantic Adjuster & Appraisers, Inc.*, preparado por el Ing. Goyco Graziani el 5 de febrero de 2018; Anejo 2: Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, con fecha del 23 de julio de 2018; Anejo 3: Contestación de One Alliance al Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, con fecha del 12 de octubre de 2018; Anejo 4: Informe del Ing. Solís, con fecha del 13 de abril de 2018; Anjeo 5: Correos electrónicos intercambiados entre el señor Orlando Rivera y el Ing. Solís, con fecha del 18 de enero de 2018; Anejo 6: Correos electrónicos entre Atlantic Adjuster & Appraisers y el señor Orlando Rivera, con fecha del 19 de junio de 2018, mediante los cuales se le remitió al señor Rivera el Informe preparado por Claims Auditors, LLC, con fecha del 19 de julio de 2018; Anejo 7: Conclusiones realizadas por el Ingeniero Pedro E. Díaz Sierra al evaluar el informe infrarrojo, con fecha del 17 de agosto de 2022.
[15] Véase, SUMAC, a la entrada 230.
[16] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 73-78.

requirió a One Alliance que entregara todos los informes realizados por los peritos.[17]

Luego de celebrarse varias vistas evidenciaras durante los meses de mayo y agosto de 2022, y tras varios trámites procesales innecesarios de puntualizar entre los años 2018 al 2024, se pautó vista en su fondo para llevarse a cabo del 14 de febrero al 1 de marzo de 2024.[18] A esos efectos, el 13 de febrero de 2024, One Alliance instó *una Moción acompañando prueba documental de la parte demandada (One Alliance)*.[19] Mediante la misma, marcó como Exhibit III el Informe Pericial de P.E. Consulting Engeneers suscrito por el Ing. Goyco Graziani, el cual según indicó se encontraba en autos; y como Exhibit VII el Informe Infrarrojo preparado por el antedicho ingeniero. Sobre el Informe Infrarrojo, esgrimió que este era parte del informe pericial del Ing. Goyco Graziani, y que el mismo ya estaba admitido en evidencia.

Así las cosas, el 20 de febrero de 2024, se celebró la continuación de la *Vista en su fondo*. Según se desprende de los autos que, durante transcurso de la vista, salió a relucir que One Alliance tenía un Informe Infrarrojo distinto al que le había suministrado a CCVA.[20] En virtud de ello, la representación legal de CCVA solicitó un receso para revisar ambos documentos. Surge de la minuta de esta *Vista* que, luego de reanudarse los procedimientos, el Lcdo. Vicente González le expresó al Tribunal que el informe que se le había remitido era distinto y contenía unas recomendaciones que no estaban en el informe en posesión de One Alliance. Planteó que el informe ocultado tenía la misma fecha que el Informe Infrarrojo a su disposición, pero no contenía el sello del Ing. Goyco Graziani, y únicamente tenía la firma electrónica de este. De manera

---

[17] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 73-78.
[18] *Íd.,* a la pág. 81.
[19] *Íd.,* a las págs. 83-102.
[20] Véase, SUMAC, a la entrada 344.

que parecía ser un borrador del Informe Infrarrojo. A tenor, acentuó que, recientemente, nuestro Tribunal Supremo resolvió que los borradores de los informes periciales deben descubrirse, puesto que se le debían imponer severas sanciones a One Alliance. Por otra parte, le suplicó al foro primario que le otorgara un término para que su perito pudiese estudiar ambos informes, y que le ordenara a One Alliance a presentar todos los correos electrónicos del Ing. Goyco Graziani que estuviesen relacionados con los informes en cuestión y todos los borradores que existieran sobre eso informes. En vista de lo acontecido, el Tribunal escuchó las posturas de ambas partes. Así, pues, determinó que la continuación del juicio en ese momento no era posible porque una de las partes se encontraba en indefensión, y que emitiría una orden en la cual atendería las peticiones realizadas en la vista. Ahora bien, en cuanto a las sanciones, dispuso que se reservaría el fallo. Ese mismo día, emitió una *Resolución y Orden*, notificada al día siguiente[21], en la cual ordenó a One Alliance y al Ing. Goyco Graziani a descubrir los siguiente:

a. Todo correo electrónico del Ing. Juan Goyco Graziani dirigido a los abogados, las partes, los ajustadores, a la compañía y a otros ingenieros referente al informe o que, esté relacionado con el informe infrarrojo.

b. Todo anejo que se incluya o se relacione a los correos electrónicos descubiertos.

c. Todo borrador de informe preparado por el Ing. Goyco Graziani y/o sus empleados o asociados.

d. Todo informe preparado por el Ing. Goyco Graziani y/o sus empleados o asociados. [22]

En respuesta, el 22 de febrero de 2024, One Alliance presentó una *Moción en cumplimiento de orden del 20 de febrero de 2024*.[23] Adjuntó a la referida moción una declaración jurada suscrita por el

---

[21] Apéndice del recurso, a las págs. 55-56.
[22] *Íd.,* a la pág. 55.
[23] *Íd.,* a las págs. 57-64.

Ingeniero Goyco Graziani el 23 de febrero de 2023, y los correos electrónicos relacionados al Informe Infrarrojo. En la aludida declaración jurada, Goyco Graziani declaró que existían dos (2) informes preparados por él, los cuales fueron adjuntados a la declaración jurada. Indicó que el informe marcado como *Anejo 1* fue preparado en el 2018, y el marcado como *Anejo 2* fue su informe final, preparado el 10 de agosto de 2022, y enviado al día siguiente.[24]

Por otra parte, surge de los documentos que se adjuntaron a la referida moción que, el 4 de noviembre de 2020, el Ing. Goyco Graziani le envió al Lcdo. Mayol Bianchi, representante legal de One Alliance, y al Ing. Solís un correo electrónico con un documento adjunto intitulado "Caribe IR Surveyjgg 02-05-18.pdf". Posteriormente, el 10 de agosto de 2022, el Ing. Goyco Graziani le envió a su hijo el documento antes indicado. Igualmente, el 11 de agosto de 2022, y el 22 de febrero de 2024, el referido ingeniero le envió un correo electrónico al Lcdo. Mayol Bianchi con dos documentos adjuntos, uno intitulado "Caribe IR Survey 02-05-18 JGG.pdf" y otro "CVA IR 02-05-2018 JGG.pdf."[25]

El mismo día en el cual One Alliance incoó la anterior moción, presentó otra moción intitulada *Moción en cumplimiento de orden del 20 de febrero de 2024 y en solicitud de orden.*[26] En lo pertinente, alegó que CCVA conocía del estudio infrarrojo desde el 20 de noviembre de 2020, puesto que en esa fecha la referida parte depuso al Ing. Goyco Graziani, y, en el transcurso de la deposición, salió a relucir la existencia del estudio. Arguyó que CCVA tuvo amplia oportunidad de preguntar en la deposición sobre el alcance del estudio infrarrojo, y no lo hizo. A esos efectos, sostuvo, en síntesis,

---

[24] Puntualizamos que los mencionados anejos no fueron incluidos a esta declaración jurada. Véase, SUMAC, a la entrada 327, Anejo (1) y Apéndice del recurso, a las págs. 57-64.

[25] Cabe resaltar que los documentos que fueron presuntamente anejados a estos correos electrónicos no fueron incluidos a esta moción. Véase, SUMAC, a la entrada 327, Anejo (2), y Apéndice del recurso, a las págs. 57-64.

[26] Apéndice del recurso, a las págs. 65-94.

que el alegado desconocimiento de CCVA sobre la existencia del estudio infrarrojo y su planteamiento de que el mismo había sido voluntariamente suprimido era temerario y con la intención de inducir a error al tribunal. Al amparo de lo expuesto, solicitó al tribunal de instancia que diera por cumplida la *Orden* del 20 de febrero de 2024, y ordenara a CCVA a cesar de su conducta dilatoria y temeraria. Nada expresó en cuanto a la revelación de dos (2) Informes Infrarrojos.

Ahora bien, One Alliance adjuntó a su escrito dos (2) Informes Infrarrojos con fecha del 5 de febrero de 2018, preparados por el Ing. Goyco Graziani. Uno de los informes fue titulado *Infrared Survey, IR Survey performed:*[27], y no contenía el sello del aludido ingeniero, únicamente una firma electrónica; mientras que el otro fue titulado *Infrared Survey, IR Survey performed: Atlantic Adjuster & Appraisers, Inc.*, y, a diferencia del primero, contenía la firma y el sello del Ing. Goyco Graziani.[28] Por otra parte, adjuntó a la referida moción un correo electrónico con fecha del 12 de agosto de 2022, suscrito por el Lcdo. Mayol Bianchi, y enviado al Lcdo. Vicente González, representante legal de CCVA, en el cual le reenvió un correo electrónico que le había remitido el Ing. Goyco Graziani el 11 de agosto de 2022, el cual indicaba los siguiente: "Adjunto las fotos de IR y el reporte del CCVA".[29] Además, incluyó a la aludida moción parte de una deposición tomada al Ing. Goyco Graziani, el 20 de noviembre de 2020, en la cual el referido ingeniero responde en afirmativo a la pregunta de si había realizado un estudio infrarrojo.[30]

---

[27] *Sic.*

[28] Apéndice del recurso, a las págs. 72-85.

[29] *Íd.,* a las págs. 86-87. Según consta en los autos, a este correo electrónico se anejó el Informe Infrarrojo intitulado *Infrared Survey, IR Survey performed: Atlantic Adjuster & Appraisers.* Lo anterior, surge del Anejo 1 de la *Moción para que se imp[usieran] las más severas sanciones, incluyendo la eliminación de las alegaciones por la deliberada ocultación de evidencia*, incoada por CCVA el 17 de agosto de 2022, en el cual se incluyó este correo electrónico y su correspondiente anejo. Véase Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 13-21.

[30] Apéndice del recurso, a la pág. 91.

Examinado lo anterior, el 22 de febrero de 2024, el tribunal de instancia emitió una *Orden*, notificada al día siguiente, en la cual dispuso lo siguiente:

> Enterado, sin embargo para poder dar por cumplida la orden falta por certificar que se entregaron todos los borradores del informe preparado por el Ing. Goyco Graziani. Tenga hasta el 23 de febrero a las 5:00 pm para certificar que se entregaron todos los borradores de informe a la parte demandante.[31]

En respuesta, el 23 de febrero de 2024, CCVA presentó una *Urgente solicitud de aplicación de orden*.[32] En la misma, puntualizó que One Alliance omitió incluir a sus mociones en cumplimiento de orden copia de los anejos que formaron parte de los correos electrónicos adjuntados. De manera que arguyó que, a fines de constatar la veracidad de lo acontecido, era necesario que el tribunal le ordenara al Ing. Goyco Graziani producir copia de todos los documentos que acompañó a sus correos electrónicos y toda factura que hubiese sometido a One Alliance, directa o indirectamente, y que certificara que había sometido todos los correos electrónicos relacionados a su informe pericial, así como los anejos y/o cualquier documentación de apoyo a los referidos borradores.

El mismo día en el cual CCVA presentó su solicitud de ampliación de orden, One Alliance presentó una *Moción en cumplimiento de orden del 22 de febrero de 2024*.[33] En la misma, anejó una declaración jurada suscrita por el Ing. Goyco Graziani, con fecha del 23 de febrero de 2024, mediante la cual expresó lo que sigue:

> […].
>
> 3. Que mediante la presente declaración jurada declaro que existen solo dos informes preparados por mí. El informe preliminar que acompaño la presente declaración jurada y que se marca como **Anejo 1** fue preparado allá para el año 2018.

---

[31] Véase, SUMAC, a la entrada 329.
[32] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 106-112.
[33] Apéndice del recurso, a las págs. 92-94.

4. Que acompaño como **Anejo 2** mi informe final que preparé el 10 de agosto de 2022, y envié al día siguiente 11 de agosto do 2022 al Lcdo. Jaime Mayol Bianchi.

[…].[34]

El 26 de febrero de 2024, One Alliance replicó a solicitud de ampliación de orden presentada por CCVA.[35] En lo pertinente, sostuvo que la petición incoada por CCVA únicamente tenía la intención de dilatar los procedimientos y de que se reactivara el descubrimiento de prueba que concluyó allá para el 2022. Afirmó que en el presente caso **solo existía un (1) Informe Infrarrojo**, el cual el tribunal conocía desde la vista celebrada el 4 de agosto de 2022. Por otro lado, indicó que los anejos solicitados ya habían sido remitidos a CCVA mediante los correos electrónicos reseñados, por lo que no tenían que ser presentados.

Evaluado lo anterior, el 26 de febrero de 2024, el foro primario emitió una *Resolución* en la que resolvió, esencialmente, que One Alliance debía certificar que había entregado toda la información que tenía que ver con el informe infrarrojo del Ing. Goyco Graziani.[36]

Ese mismo día, se celebró una continuación a la *Vista en su fondo.* En la misma, las partes del título expresaron sus argumentos en cuanto lo ocurrido en la última vista celebrada con relación al Informe infrarrojo del Ing. Goyco Graziani, y en cuanto a las mociones presentadas al respecto.[37] Así, pues, el mismo día en el cual se celebró la referida vista, el tribunal de instancia emitió la

---

[34] Apéndice del recurso, a la pág. 93. El documento marcado como **Anejo I** era el informe intitulado *Infrared Survey, IR Survey performed,* previamente incorporado a la *Moción en cumplimiento de orden del 20 de febrero de 2024*, y el marcado como **Anejo II** era el intitulado *Infrared Survey, IR Survey performed: Atlantic Adjuster & Appraisers*, el cual, igualmente, había sido incluido a la antedicha moción. Aunque nada se dispuso en la declaración jurada sobre los correos electrónicos, se incluyó como **Anejo II** el correo electrónico enviado por el Lcdo. Mayol Bianchi al Lcdo. Vicente González el 12 de agosto de 2022, en el cual le remitió el informe infrarrojo.[34] Cabe resaltar que los antedichos anejos no se incluyeron al presente recurso, únicamente se presentó ante nos la declaración jurada. Véase, SUMAC, a la entrada 327.
[35] Véase, SUMAC, a la entrada 333.
[36] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 113-114.
[37] Véase, SUMAC, a la entrada 355.

*Resolución* y *Orden* que nos ocupa, y la notificó al día siguiente.[38]

Mediante el referido dictamen, resolvió lo siguiente:

1. Se eliminan los informes infrarrojos (el preliminar y el final) así como el testimonio del Ing. Goyco Graziani en esta parte de los procedimientos (R 34. 3 (b)(2)).

2. El Ing. Goyco Graziani queda excusado de comparecer a los señalamientos futuros (R. 34.3 (b)(2)).

3. Así como que se da por probado el informe pericial de la parte demandante con relación a los daños del techo (R .34. 3 (b)(1)).[39]

En su *Resolución*, el foro primario acentuó que se le ordenó a One Alliance a descubrir todo lo relacionado a los informes periciales en cuestión, sin embargo, no descubrió la totalidad de lo solicitado. Igualmente, puntualizó que en la vista celebrada ese mismo día One Alliance no explicó la razón por la cual no incluyó los anejos peticionados, ni certificó que no existieran. A tenor, expresó que el deber de descubrir prueba es continuo y no está condicionado a que esta sea concluyente. A su vez, subrayó que es responsabilidad de la representación legal de las partes obedecer todo lo dispuesto en cuanto al descubrimiento de prueba, y que no queda de ellos la elección de qué se descubre y qué no.[40]

Inconforme, One Alliance presentó una *Moción de reconsideración*, a la cual CCVA se opuso.[41] Evaluadas las posturas de las partes, mediante una *Resolución* emitida y notificada, el 30 de mayo de 2024[42], el foro primario concluyó que el remedio que se aplicó, a través del cual se eliminó el informe infrarrojo y el

---

[38] Apéndice del recurso, a las págs. 95-100.
[39] Apéndice del recurso, a la pág. 100.
[40] *Íd.,* a las págs. 98-100.
[41] *Íd.,* a las págs. 101-134. Según consta del expediente electrónico del tribunal de instancia, la oposición a la reconsideración instada por CCVA contenía una serie de anejos, los cuales no se incluyeron a este recurso. Véase, SUMAC, a la entrada 373.
[42] Apéndice del recurso, a las págs. 164-165.

testimonio del Ingeniero Goyco Graziani fue "adecuado y suficiente".[43]

En desacuerdo, el 24 de junio de 2024, el peticionario presentó un recurso de *Certiorari*, en el cual esbozó la comisión de los siguientes dos (2) errores:

1. Se excedió en su discreción el Tribunal de Primera Instancia al eliminar el testimonio de parte de la prueba pericial anunciada por la parte peticionaria durante el acto del Juicio en su Fondo a pesar de haber recibido y admitido las mismas durante las Vistas celebradas al amparo de la Regla 56 de las de Procedimiento Civil de 2009;

2. Se excedió y abusó de su discreción el TPI al determinar cómo sanción al amparo de la Regla 34 de las de Procedimiento Civil de 2009 el considerar probado sin pase de prueba el segundo informe pericial presentado por la parte demandante durante la celebración del Juicio en su Fondo sin el mismo gozar de base científica alguna que lo avalara.

En la misma fecha en que se presentó el recurso apelativo del título, la parte peticionaria presentó un *Moción Urgente en Auxilio de Jurisdicción.* En la misma, expresó que acudió en auxilio jurisdicción puesto que el foro primario se negó a paralizar los procedimientos, procedió a dar por sometido el caso y resolvió que estaría dictando sentencia. Por otra parte, afirmó que se le causaría un daño claro patente e inminente al no permitirle el foro primario presentar el testimonio experto del Ing. Goyco Graziani. En atención a lo anterior, mediante *Resolución,* emitida el 28 de junio de 2024, dispusimos paralizar los procedimientos en este caso.

Posterior a que emitimos la antedicha *Resolución,* el 3 de julio de 2024, la parte recurrida presentó *Urgente moción para que este tribunal de[jara] sin efecto su orden de paralización en auxilio de jurisdicción por haber sido emitida porque la parte peticionaria le ha inducido a error.* En el escrito, afirmó que la parte peticionaria, en su solicitud de auxilio, realizó alegaciones incorrectas que no se

---

[43] *Íd.,* a la pág. 165.

sostenían por el récord del caso. A su vez, resaltó que la referida parte ocultó lo que verdaderamente aconteció con el Informe Infrarrojo. Por último, planteó que en la moción en auxilio no se demostró que se le ocasionaría a la parte peticionaria un daño irreparable dado a que en este caso solo restaba dictar sentencia, por lo que luego se podría presentar un recurso de apelación de ser necesario. Además, posteriormente, presentó una solicitud de término adicional para presentar su posición en torno al recurso incoado. Así, pues, mediante *Resolución* emitida declaramos *No Ha Lugar* la solicitud para que se dejara sin efecto la paralización de los procedimientos y concedimos hasta el 22 de julio de 2024, para que la parte recurrida presentara su posición en torno al recurso de Certiorari.

Por otro lado, el 19 de julio de 2024, la parte recurrida presentó su *Alegato en Oposición*, por lo que, con el beneficio de la comparecencia de ambas partes, procederemos a exponer el derecho aplicable.

II

**A. Expedición del Recurso de *Certiorari***

Los recursos de *Certiorari* presentados ante el Tribunal de Apelaciones deben ser examinados en principio bajo la Regla 52.1 de las Reglas de Procedimiento Civil.[44] Esta Regla limita la autoridad y el alcance de la facultad revisora de este Tribunal mediante el recurso de *Certiorari* sobre órdenes y resoluciones dictadas por los Tribunales de Primera Instancia. La Regla lee como sigue:

[…].

El recurso de Certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente,

---

[44] 32 LPRA Ap. V, R. 52.1.

el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de Certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.[45]

[...].

Por su parte, la Regla 52.2 (b) dispone sobre los términos y efectos de la presentación de un recurso de *Certiorari* que:

[...].

Los recursos de *certiorari* al Tribunal de Apelaciones para revisar resoluciones u órdenes del Tribunal de Primera Instancia o al Tribunal Supremo para revisar las demás sentencias o resoluciones finales del Tribunal de Apelaciones en recursos discrecionales o para revisar cualquier resolución interlocutoria del Tribunal de Apelaciones deberán presentarse dentro del término de treinta (30) días contados desde la fecha de notificación de la resolución u orden recurrida. El término aquí dispuesto es de cumplimiento estricto, prorrogable sólo cuando medien circunstancias especiales debidamente sustentadas en la solicitud de *certiorari*.

[...].[46]

Establecido lo anterior, precisa señalar que el recurso de *Certiorari* es un vehículo procesal que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[47] A diferencia del recurso de apelación, el auto de *Certiorari* es de carácter discrecional.[48] La discreción ha sido definida como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera".[49] A esos efectos, se ha considerado que "la discreción se nutre de un juicio racional apoyado en la razonabilidad y en un sentido llano de justicia y no es

---

[45] 32 LPRA Ap. V, R. 52.1.
[46] *Íd.*
[47] *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023)*; 800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020).
[48] *Rivera Figueroa v. Joes's European Shop,* 183 DPR 580, 596 (2011).
[49] *Mun. de Caguas v. JRO Construction, Inc.* 201 DPR 703, 712 (2019); *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434-435 (2013).

función al antojo o voluntad de uno, sin tasa ni limitación alguna".[50] Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones esgrime que el Tribunal deberá considerar los siguientes criterios para expedir un auto de *Certiorari:*

A. Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F. Si la expedición el auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. [51]

El Tribunal Supremo de Puerto ha establecido que un tribunal revisor no debe sustituir su criterio por el del foro de instancia, salvo cuando estén presentes circunstancias extraordinarias o indicios de pasión, prejuicio, parcialidad o error manifiesto.[52] Quiérase decir, no hemos de interferir con los Tribunales de Primera Instancia en el ejercicio de sus facultades discrecionales, excepto en aquellas situaciones en que se demuestre que este último: (i) actuó con prejuicio o parcialidad, (ii) incurrió en un craso abuso de discreción, o (iii) se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[53]

---

[50] *SLG Zapata-Rivera v. J.F. Montalvo,* supra, 435.
[51] 4 LPRA Ap. XXII-B, R.40.
[52] *Coop. Seguros Múltiples de P.R. v. Lugo,* 136 DPR 203, 208 (1994).
[53] *Rivera y otros v. Bco. Popular,* 152 DPR 140, 155 (2000).

Por último, advertimos que la denegatoria a expedir un recurso discrecional no implica la ausencia de error en el dictamen cuya revisión se solicitó, como tampoco constituye una adjudicación en sus méritos. Meramente, responde a la facultad discrecional del foro apelativo intermedio para no intervenir a destiempo con el trámite pautado por el foro de instancia.[54]

### III

Habida cuenta de que el recurso ante nuestra consideración se trata de un *Certiorari*, este tribunal revisor debe determinar, como cuestión de umbral, si procede su expedición. En el presente caso, la parte peticionaria sostiene que el foro primario se excedió en su discreción al eliminar el testimonio del Ing. Goyco Graziani y al considerar probado sin base de prueba el segundo informe pericial presentado por la parte recurrida.[55]

Como es sabido, un tribunal apelativo no intervendrá con el ejercicio de la discreción de los Tribunales de Primera Instancia, salvo que se demuestre que dicho tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo.[56] Puntualizamos, que el *Certiorari* es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior.[57] A esos efectos, la naturaleza discrecional del recurso de *Certiorari* queda enmarcada dentro de la normativa que le concede deferencia de las actuaciones de los Tribunales de Primera Instancia, de cuyas determinaciones se presume su corrección. Por ello, aunque la Regla 52.1 de Procedimiento Civil[58] permite que mediante auto de *Certiorari* intervengamos en asuntos relativos a privilegios evidenciaros, esta

---

[54] *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96 (2008)
[55] 32 LPRA Ap. VI, R. 408.
[56] *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[57] *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).
[58] 32 LPRA Ap. V, R. 52.1.

Regla no opera en el vacío, tiene que anclarse en una de las razones de peso que establece la Regla 40 del Reglamento del Tribunal de Apelaciones.[59]

Tras evaluar minuciosamente el recurso presentado por el peticionario, y luego de una revisión de la totalidad del expediente ante nos y del expediente ante el foro primario disponible a través de SUMAC, es nuestra apreciación que no se configuran ninguna de las instancias que justificaría la expedición del auto de *Certiorari* al amparo de la Regla 40 del Reglamento del Tribunal de Apelaciones.[60] El señalamiento de error y los fundamentos aducidos en la petición presentada no logran activar nuestra función discrecional en el caso de autos. Juzgamos que no nos encontramos ante una determinación que configure abuso de discreción, prejuicio, parcialidad o error craso y manifiesto que amerite nuestra intervención revisora. Además, según quedó demostrado en el tracto procesal que precede, el dictamen recurrido no es patentemente erróneo, y encuentra cómodo resguardo en la sana discreción de la primera instancia judicial. Además, razonamos que el peticionario no nos ha persuadido de que, al aplicar la norma de abstención apelativa en este momento, conforme al asunto planteado, constituirá un rotundo fracaso de la justicia. Por todo lo antes mencionado, no atisbamos razón para intervenir con la determinación recurrida.

Lo aquí resuelto, advertimos, no tiene efecto de juzgar o considerar en los méritos ninguna de las controversias de derecho planteadas por las partes, de modo que estas podrían ser planteadas nuevamente en una etapa posterior. Es decir, la denegatoria de esta Curia a expedir un recurso de *Certiorari* no implica que el dictamen revisado esté libre de errores o que constituya una adjudicación en

---

[59] 4 LPRA Ap. XXII-B, R.40.
[60] *Íd.*

los méritos.[61] Esto es así, ya que, como es sabido, una resolución de denegatoria de un auto de *Certiorari* no implica posición alguna de este Tribunal respecto a los méritos de la causa sobre la cual trata dicho recurso.[62] La resolución denegatoria simplemente es indicio de la facultad discrecional del tribunal revisor de negarse a revisar en determinado momento una decisión emitida por el TPI. [63]

IV

Por los fundamentos que anteceden, se *deniega* la expedición del auto de *Certiorari*, y, en consecuencia, se deja sin efecto la orden de paralización emitida mediante *Resolución* el 28 de junio de 2024.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones. La Juez Lebrón Nieves emite Voto Disidente escrito.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[61] *Cacho Pérez v. Hatton Gotay*, 195 DPR 1, 12 (2016).
[62] *SLG v. Pauneto Rivera*, 130 DPR 749, 755 (1992).
[63] *Íd.*, 756.

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI-ESPECIAL

| | | |
|---|---|---|
| CCVA, INC.<br><br>Recurrida<br><br>V.<br><br>ONE ALLIANCE INSURANCE CORPORATION<br><br>Peticionaria | KLCE202400710 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.: SJ2018CV04322<br><br>Sobre: Injunction – Clásico, Seguros, Incumplimiento Aseguradoras Huracanes Irma / María |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Adames Soto y la Jueza Martínez Cordero

**VOTO DISIDENTE DE LA JUEZ LEBRÓN NIEVES**

En San Juan, Puerto Rico, a 20 de agosto de 2024.

La Mayoría del Panel ha determinado denegar el recurso que nos ocupa, en el que One Alliance Insurance Corp. nos solicita que dejemos sin efecto la *Resolución* emitida el 26 de febrero de 2024, y notificada al día siguiente, por el foro *a quo*. En resumen, mediante la aludida *Resolución*, el foro primario eliminó tanto el informe preliminar como el informe final rendido por el perito de la parte peticionaria, el Ingeniero Juan Goyco Graziani, así como su testimonio y excusó a dicho perito de comparecer a los señalamientos futuros. Subsiguientemente, dio por probado el informe pericial de la parte recurrida con relación a los daños del techo reclamados.

En desacuerdo con lo dictaminado, la parte peticionaria interpuso ante el foro recurrido una reconsideración, la cual fue denegada mediante *Resolución* emitida y notificada el 30 de mayo de 2024.[64] En la misma, el foro primario sostuvo la determinación previamente emitida.[65]

Por los fundamentos que en adelante se exponen, esta Juez, considera que el dictamen del foro primario es *contrario a derecho*, por lo que, disiente del curso de acción tomado por la Mayoría del Panel, al denegar el recurso de marras.

**I**

Repasemos brevemente el tracto procesal que enmarca la controversia ante nuestra consideración. Tal y como se desprende de la *Resolución* mayoritaria, el 13 de junio de 2018, CCVA, Inc. interpuso una *Demanda* sobre sentencia declaratoria, *injunction* y daños en contra de One Alliance, en la que reclamó los alegados daños sufridos a su estructura física a consecuencia del Huracán María, los cuales estimó en una suma mayor de $11,000,000.00 dólares, así como las pérdidas a su negocio, estimadas en exceso $728,998.00 dólares. Acotó que, para la fecha de la ocurrencia en cuestión, mantenía la póliza de seguro número 75-28-000001234-0 emitida a su favor por One Alliance, la cual cubría daños reclamados.

De las propias alegaciones de la *Demanda* se desprende que, el 5 de marzo de 2018, One Alliance, le envió a la parte recurrida un *adelanto* de $250,000.00 dólares. Empero, ante el desacuerdo con dicha cantidad, la parte recurrida le solicitó al foro primario que emitiera una sentencia declaratoria, a los fines de establecer que CCVA tiene derecho a recibir el pago por las

---

[64] Apéndice del recurso, a las págs. 164-165.
[65] *Íd.*

pérdidas reclamadas, y que One Alliance incurrió en violaciones al Código de Seguros y en prácticas desleales en el ajuste de sus reclamaciones. Solicitó, además, que se emitiera un remedio interdictal para que One Alliance se abstuviera de incurrir en violaciones al Código de Seguros y su reglamento.

Subsiguientemente, le suplicó al foro primario que condenara a la parte peticionaria a pagarle, además de las cantidades reclamadas, la suma de $1,000,000.00 dólares, por los daños y gastos alegadamente sufridos al negarse esta última, a pagar las pérdidas sobrellevadas, más una suma en pago de las costas del litigio, intereses y honorarios de abogado.

Por su parte, One Alliance contestó la *Demanda* el 13 de agosto de 2018. En su alegación responsiva, negó haber incurrido en violaciones al Código de Seguros. Alegó afirmativamente que, luego de recibir la reclamación formal por parte del ajustador público de CCVA, consultó a los expertos necesarios, entre estos, los ingenieros Goyco Graziani y Emilio J. Solís, con el propósito de ajustar y pagar los daños cubiertos por la póliza expedida y ocasionados por el huracán. A esos efectos, el **19 de abril de 2018**, la parte peticionaria le cursó a CCVA una oferta detallada por la suma de $1,927,210.60 dólares, a la cual se le debía restar el deducible correspondiente a $961,472.00 dólares y el adelanto de $250,000.00 dólares, lo cual dejaba un total a pagar de $715,753.60 dólares. La parte peticionaria aseveró que CCVA presentó la acción del título con mala fe y con el propósito de enriquecerse injustamente.

Cabe destacar que, conforme surge del tracto procesal del caso, la parte peticionaria desde su comparecencia inicial incorporó como defensas afirmativas los aludidos informes de los

ingenieros previamente mencionados, y arguyó que, surgía de los mismos que los daños sufridos en el techo de la estructura se debían principalmente a su antigüedad y a la falta de mantenimiento, por lo que eran pocos los daños que se le podían atribuir al Huracán María.

El 4 de agosto de 2022, el foro primario celebró la continuación de una *Vista* sobre aseguramiento de sentencia, en la que fue llamado a testificar el Ing. Goyco Graziani, como experto en techos. Así las cosas, durante el contrainterrogatorio realizado al Ing. Goyco Graziani se reveló que este hizo un estudio infrarrojo en la estructura. A petición de la representación legal de CCVA, el foro primario ordenó a la parte peticionaria que, en el término de diez (10) días, produjera el informe del antedicho estudio con todas las fotografías que se tomaron en el mismo.

El 17 de agosto de 2022, CCVA interpuso *Moción para que se imp[usieran] las más severas sanciones, incluyendo la eliminación de las alegaciones por la deli[b]erada ocultación de evidencia*, en la que alegó, en esencia, 12 de agosto de 2022, mediante correo electrónico, el Lcdo. Mayol Bianchi, representante legal de One Alliance, le remitió un documento intitulado "*Infrared Survey Report*" con fecha del 5 de febrero de 2018, preparado por el Ing. Goyco Graziani. No obstante lo anterior, arguyó que, One Alliance intencionalmente se reservó la divulgación del referido informe.

Aludió a que, como parte del descubrimiento de prueba, el 23 de julio de 2018, le remitió a One Alliance un *Primer pliego de interrogatorios y requerimiento de producción de documentos* en el que le solicitó copia de los informes rendidos por cada uno de los peritos y copia de cualquier investigación realizada; sin embargo,

One Alliance únicamente proveyó un informe preparado por el Ing. Solís y un *Inspection Report* preparado por el Ing. Goyco Graziani con fecha del 26 de enero de 2018 sin mencionar la realización de un estudio infrarrojo. Le imputó a la parte peticionaria ocultar evidencia y le solicitó al tribunal *a quo* que sancionara a esta con la eliminación de sus alegaciones; o, en la alternativa, que excluyera del juicio el testimonio del Ing. Solís y el Ing. Goyco Graziani.[66]

En respuesta, la parte peticionaria presentó el 31 de agosto de 2022, *Moción en oposición, réplica y solicitud,* en la que expuso que la parte recurrida conocía del estudio infrarrojo desde la deposición que se le tomó al Ing. Goyco Graziani el **20 de noviembre de 2020**.[67] Además, arguyó que, si en ese momento se le hubiese solicitado a la parte recurrida el referido informe, no se hubiera negado a proveérselo. A su vez, sostuvo que, el aludido ingeniero testificó ante el foro primario que el estudio infrarrojo no fue concluyente para establecer los daños. Al amparo de lo anterior, le solicitó al tribunal de instancia que desestimara la solicitud de sanciones por frívola y temeraria, y peticionó que se condenara a CCVA a pagarle las costas, los gastos interlocutorios y honorarios de abogado.

---

[66] Para sustentar su petitorio anejó a su moción lo siguiente: Anejo 1: correo electrónico suscrito por el Lcdo. Mayol Bianchi el 12 de agosto de 2022, y remitido al Lcdo. Harold D. Vicente, represente legal de CCVA, mediante el cual le envió el informe infrarrojo; documento intitulado *Infrared Survey Report performed for Atlantic Adjuster & Appraisers, Inc.,* preparado por el Ing. Goyco Graziani el 5 de febrero de 2018; Anejo 2: Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, con fecha del 23 de julio de 2018; Anejo 3: Contestación de One Alliance al Primer Pliego de Interrogatorios y Requerimiento de Producción de Documentos, con fecha del 12 de octubre de 2018; Anejo 4: Informe del Ing. Solís, con fecha del 13 de abril de 2018; Anjeo 5: Correos electrónicos intercambiados entre el señor Orlando Rivera y el Ing. Solís, con fecha del 18 de enero de 2018; Anejo 6: Correos electrónicos entre Atlantic Adjuster & Appraisers y el señor Orlando Rivera, con fecha del 19 de junio de 2018, mediante los cuales se le remitió al señor Rivera el Informe preparado por Claims Auditors, LLC, con fecha del 19 de julio de 2018; Anejo 7: Conclusiones realizadas por el Ingeniero Pedro E. Díaz Sierra al evaluar el informe infrarrojo, con fecha del 17 de agosto de 2022.
[67] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 73-78.

El 21 de octubre de 2022, CCVA replicó a la oposición presentada por la parte recurrida, en la que reconoció que, tenía conocimiento de que el Ing. Goyco Graziani había realizado un estudio infrarrojo. Adujo que, dado a que nunca se le remitió un informe pericial sobre el referido estudio, entendía que no se había preparado un informe y negó el argumento de que no solicitó descubrir el aludido informe, puesto que se le había requerido a la parte peticionaria que entregara todos los informes realizados por los peritos.[68]

Durante el litigio, las partes han estado envueltas activamente en el descubrimiento de prueba. Es meritorio puntualizar que, obran en autos sendos escritos que evidencian que el ingeniero Goyco, perito de la parte peticionaria, fue depuesto y que el aludido informe infrarrojo en controversia fue producido a la parte recurrida con suficiente antelación, razón por la cual, esta Juez considera que el foro *a quo* abusó de su discreción, al imponerle a la parte peticionaria la drástica sanción de la eliminación del perito. Lo anterior, tiene el efecto neto de privar injustificadamente a dicha parte de su derecho a un debido proceso.

**II**

### A. Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 2023 TSPR 65, 212 DPR ___ (2023); *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.*,

---

[68] Apéndice del alegato en oposición al auxilio de jurisdicción, a las págs. 73-78.

207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020)[69]. Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A)  Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B)  Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C)  Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D)  Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E)  Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F)  Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G)  Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.

---

[69] Véase también *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR*, 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 327 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97.

Por otro lado, a partir del 1 de julio de 2010, se realizó un cambio respecto a la jurisdicción del Tribunal Apelativo para revisar los dictámenes interlocutorios del Tribunal de Primera Instancia mediante recurso de *certiorari*. A tal fin, la Regla 52.1 de Procedimiento Civil, dispone, en su parte pertinente, lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. (Énfasis Nuestro).
> [. . .]

Según se desprende de la precitada Regla, este foro apelativo intermedio podrá revisar órdenes interlocutorias discrecionalmente, cuando se recurre de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía o en casos de relaciones de familia o que revistan interés público, o en aquellas circunstancias en las que revisar el dictamen evitaría un irremediable fracaso de la justicia, entre otras contadas excepciones. *Torres González v. Zaragoza Meléndez*, supra, págs. 820

De igual manera, la precitada regla procesal "reconoce que ciertas determinaciones interlocutorias pueden afectar sustancialmente el resultado del pleito o tener efectos limitativos para la defensa o reclamación de una parte o conllevar cuestiones neurálgicas o de política pública que deben estar sujetos a revisión de forma inmediata". *Íd.* págs. 820-821 citando a Hernández Colón *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, Sec. 5515a, pág. 533.

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pérez v. Tribunal de Distrito*, 69 DPR 4, 7 (1948). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que "de ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o

parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial". *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992*); Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

## B. El descubrimiento de prueba y la eliminación de la prueba pericial como sanción

Como sabemos, la Regla 23 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V R. 23, regula el descubrimiento de prueba entre las partes antes del juicio. Por su parte, la Regla 23.1 (a) de Procedimiento Civil[70] dispone sobre el alcance del descubrimiento de prueba lo siguiente:

> El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, de conformidad con las disposiciones de estas reglas, será como sigue:
>
> (a) En general. Las partes podrán hacer descubrimiento sobre cualquier materia, no privilegiada, que sea pertinente al asunto en controversia en el pleito pendiente, ya se refiera a la reclamación o defensa de cualquier otra parte, incluyendo la existencia, descripción, naturaleza, custodia, condición y localización de cualesquiera libros, documentos u otros objetos tangibles y la identidad y dirección de personas que conozcan hechos pertinentes. No constituirá objeción el que la información solicitada sea inadmisible en el juicio, siempre que exista una probabilidad razonable de que dicha información conduzca al descubrimiento de evidencia admisible.
> . . .

De dicha disposición se desprende que "el alcance del descubrimiento de prueba está limitado sólo a que la información solicitada sea pertinente al asunto en controversia y no sea privilegiada". *Medina v. Merk Sharp & Dohme*, 135 DPR 716, 730-731 (1994); *General Electric v. Concessionaires Inc.,* 118 DPR 32, 38-39 (1986).

---

[70] 32 LPRA Ap. V, R. 23.1.

Nuestra Alta Curia ha puntualizado que, el descubrimiento de prueba cumple el propósito de: (1) delimitar las controversias; (2) facilitar la consecución de evidencia; (3) evitar las sorpresas en el juicio; (4) facilitar la búsqueda de la verdad, y (5) perpetuar la prueba. Véase R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal* civil, 6ta ed., San Juan, Ed. LexisNexis, 2017, págs. 333-334.

En cuanto al alcance del descubrimiento, nuestra última instancia judicial ha adoptado la política de que el mismo debe ser amplio y liberal. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 203 (2023); *Cruz Flores et al. v. Hosp. Ryder et al.,* 210 DPR 465, 510 (2022); *McNeil Healthcare v. Mun. Las Piedras II,* 206 DPR 659, 672 (2021); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 152 (2000). De igual forma, nuestro Alto Foro ha expresado que los tribunales de instancia tienen amplia discreción para regular el ámbito del descubrimiento, pues es su obligación garantizar una solución justa, rápida y económica del caso, sin ventajas para ninguna de las partes. *Cruz Flores et al. v. Hosp. Ryder et al., supra.* Por lo tanto, al momento de limitar el descubrimiento de prueba según las Reglas de Procedimiento Civil, los tribunales deberán hacer un balance entre estos dos intereses. *Rivera y otros v. Bco. Popular, supra*, págs. 154-155; *Lluch v. España Service Sta.,* 117 DPR 729, 742-743 (1986). *Rivera et al. v. Arcos Dorados et al.*, supra, págs. 203-204.

Por otro lado, respecto al término para la utilización de los medios de descubrimiento de prueba, el profesor Hernández Colón señala lo siguiente:

> **El término límite para utilizar los medios de descubrimiento de prueba se determinará en la orden de calendarización que el juez tenga a bien adoptar conforme con la complejidad de las**

**controversias y la cantidad de partes involucradas en el pleito**. Una vez las partes sometan el *Informe para el Manejo del Caso* que exige la R. 37.1, 2009, en donde detallarán toda la información y la prueba que hayan intercambiado; especificarán la que falta por intercambiar y el calendario para la utilización de los mecanismos de descubrimiento, **el juez podrá emitir una orden de calendarización en la que calendarice el descubrimiento de prueba acordado entre las partes o determinado en la Conferencia Inicial y precise el término para concluir con la etapa del descubrimiento de prueba**. (Negrilla suplida). Hernández Colón, *op. cit.*, pág. 335.

En armonía con lo antes expuesto, la Regla 37.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V, provee para que el tribunal emita una orden sobre la calendarización del caso que recoja las disposiciones y acuerdos considerados en la conferencia inicial. De esta forma, la regla permite la intervención temprana del tribunal para establecer de manera clara la calendarización del caso.[71] Al mismo tiempo, la regla dispone que "[l]os términos y los señalamientos fijados en la orden de calendarización serán de estricto cumplimiento, sujeto a la sanción establecida en la Regla 37.7 de este apéndice". Regla 37.3(c) de Procedimiento Civil de 2009, *supra. Rivera et al. v. Arcos Dorados et al.*, supra, págs. 204-205.

Como vemos, la Regla 37.7 de Procedimiento Civil de 2009, 32 LPRA Ap. V, regula lo concerniente a la imposición de sanciones económicas por incumplir con las órdenes y los señalamientos relacionados al manejo del caso, sin que medie justa causa.[72] Específicamente, el texto de la regla dispone que

---

[71] El tratadista Cuevas Segarra menciona lo siguiente sobre la Regla 37.3 de Procedimiento Civil de 2009, 32 LPRA Ap. V: "Esta regla permite que el tribunal intervenga en el pleito desde una etapa inicial y establezca la calendarización del caso mediante orden al efecto, la cual se considera vital dentro del nuevo orden concebido para el manejo del caso". J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, Tomo III, pág. 1108. Véase, también, Comité Asesor Permanente de las Reglas de Procedimiento Civil, *Informe de Reglas de Procedimiento Civil*, Secretariado de la Conferencia Judicial y Notarial, Tribunal Supremo de Puerto Rico, marzo de 2008, pág. 429.
[72] Cabe destacar que nuestro ordenamiento procesal reconoce la facultad del tribunal para sancionar al abogado, a la parte o ambos en diferentes instancias. Véanse: Reglas 9.1, 9.3, 9.4, 23.1, 23.2, 34.2, 34.3, 34.4, 34.5, 34.6, 35.1, 36.7,

"**[s]i una parte o su abogado o abogada** incumple con los términos y señalamientos de esta regla, o **incumple cualquier orden del tribunal para el manejo del caso sin que medie justa causa, el tribunal impondrá a la parte o su abogado o abogada la sanción económica que corresponda**". (*Énfasis en el original*). *Íd.*

De acuerdo con este lenguaje, "[e]l juez sólo tiene discreción para considerar si las razones que brinda la parte o el abogado que incumplió son suficientes para justificar la no imposición de la sanción económica". Hernández Colón, *op. cit.*, pág. 387. **Claro está, nada impide que posteriormente se impongan sanciones más drásticas, luego de que se aperciba a la parte sobre las consecuencias del incumplimiento y se conceda un tiempo razonable para corregir la situación**. Véase J.A. Cuevas Segarra, *Tratado de derecho procesal civil*, 2da ed., Estados Unidos, Publicaciones JTS, 2011, Tomo III, págs. 1118-1119. *Id.*

Con la aprobación de la Regla 37.7 de Procedimiento Civil de 2009, *supra*, la cual procede -en parte- de la Regla 37.3 de Procedimiento Civil de 1979, 32 LPRA Ap. III (ed. 1983), se eliminó la sanción en primera instancia de la desestimación de la demanda,[73] ya que se encuentra en conflicto con la Regla 39.2(a) de Procedimiento Civil de 2009, *supra*.[74] La Regla 37.7 de

---

37.1, 37.3, 37.4, 37.7, 39.2, 39.4, 40.4, 40.10 y 44.2 de Procedimiento Civil de 2009, 32 LPRA Ap. V. Véase, también, R. Hernández Colón, *Práctica jurídica de Puerto Rico: derecho procesal civil*, 6ta ed., San Juan, Ed. LexisNexis, 2017, pág. 246.

[73] Cuevas Segarra, *op. cit.*, pág. 1118. Véase, también, Comité Asesor Permanente de las Reglas de Procedimiento Civil, *supra*, pág. 443.

[74] La Regla 39.2(a) de Procedimiento Civil de 2009, 32 LPRA Ap. V, dispone lo siguiente: "(a) Si la parte demandante deja de cumplir con estas reglas o con cualquier orden del tribunal, el tribunal a iniciativa propia o a solicitud de la parte demandada podrá decretar la desestimación del pleito o de cualquier reclamación contra esta o la eliminación de las alegaciones, según corresponda.

Cuando se trate de un primer incumplimiento, la severa sanción de la desestimación de la demanda o la eliminación de las alegaciones tan sólo procederá después que el tribunal, en primer término, haya apercibido al abogado o abogada de la parte de la situación y se le haya concedido la oportunidad para responder. Si el abogado o abogada de la parte no responde a tal apercibimiento, el tribunal procederá a imponer sanciones al abogado o abogada de la parte y se

Procedimiento Civil de 2009, *supra*, que además es equivalente - en parte- a la Regla 16(f) de las Reglas de Procedimiento Civil Federal, Fed. R. Civ. P. 16(f), 28 USCA, también difiere de esta última en que no contiene una referencia expresa a la regla de sanciones del descubrimiento de prueba, que incluye la limitación de la presentación de prueba en el juicio, "**pues contempla la sanción económica como el disuasivo principal con el incumplimiento con esta Regla 37 que requiere el cumplimiento cabal con los términos y señalamientos de esta regla y con la orden de manejo del caso para el buen funcionamiento**". (Negrilla suplida). Cuevas Segarra, *op. cit.*, págs. 1119-1120.

Particularmente atinente a la controversia que nos ocupa, la Regla 702 de las Reglas de Evidencia, 32 LPRA Ap. VI, regula lo referente al testimonio pericial y dispone que cuando conocimiento científico, técnico o especializado sea de ayuda para la juzgadora o el juzgador poder entender la prueba o determinar un hecho en controversia, una persona testigo capacitada como perita, conforme a la Regla 703, podrá testificar en forma de opiniones o de otra manera.

En el caso *S.L.G Font Bardón v. Mini-Warehouse*, 179 DPR 322, 338 (2010), nuestra más alta instancia judicial definió al perito como "una persona que, a través de la educación o experiencia, ha desarrollado un conocimiento o destreza sobre una materia de manera que puede formar una opinión que sirva de ayuda al juzgador". Black's Law Dictionary, 8va ed.,

---

notificará directamente a la parte sobre la situación. Luego de que la parte haya sido debidamente informada o apercibida de la situación y de las consecuencias que pueda tener el que la misma no sea corregida, el tribunal podrá ordenar la desestimación del pleito o la eliminación de las alegaciones. El tribunal concederá a la parte un término de tiempo razonable para corregir la situación que en ningún caso será menor de treinta (30) días, a menos que las circunstancias del caso justifiquen que se reduzca el término".

Minnesota, Ed. Thomson West, 2004, pág. 619.  Sobre este particular, el Tribunal Supremo de Puerto Rico añadió que el perito es "la persona entendida, el individuo competente, idóneo, por tener unas determinadas aptitudes y conocimientos, por poseer una adecuada capacidad".  En el antes citado caso, el Tribunal Supremo de Puerto Rico hizo una distinción entre el perito consultor y el perito testigo. Al respecto indicó que: "cuando un perito es consultado por una parte, pero no se espera que sea llamado a testificar en el juicio, se le conoce como perito consultor." Black's Law Dictionary, op. cit., pág. 619. Si, por el contrario, el perito ha sido identificado como un testigo potencial, entonces será un perito testigo. *S.L.G Font Bardón v. Mini-Warehouse*, supra, págs. 338-339. Cabe destacar que, en el caso de autos, estamos ante un perito testigo.

Por lo general, los peritos consultores y los peritos testigos reciben un trato distinto durante el descubrimiento de prueba. Tanto las Reglas de Procedimiento Civil de Puerto Rico, *supra*, como las Reglas de Procedimiento Civil Federal, 28 U.S.C.A. R. 1 *et seq.*, reconocen que una parte puede requerirle a otra que provea cierta información sobre sus peritos testigos que no tiene que proveer con relación a los peritos consultores. *Id.*, pág. 339.

En nuestra jurisdicción, se le puede exigir a la otra parte que exprese la materia sobre la cual va a declarar el perito testigo, y que entregue un resumen de sus opiniones y una breve expresión de las teorías, hechos o argumentos que sostienen las mismas. Regla 23.1 de Procedimiento Civil, [32 LPRA Ap. V, R. 23.1].[75] *Id.*, pág. 339.

---

[75] La Regla 23.1 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V, R. 23.1 regula lo relacionado al alcance del descubrimiento de prueba en materia civil. Dicha regla dispone en lo aquí pertinente que:

En otras palabras, mediante el mecanismo del descubrimiento de prueba pericial, una parte puede requerirle a otra el nombre y dirección de los peritos consultados y de los que intente presentar en el juicio, la materia sobre la cual van a declarar, un resumen de sus opiniones y una breve expresión de las teorías que sostienen su opinión[76]. Las Reglas de Procedimiento Civil de 2009, no establecen un término final específico para concluir el descubrimiento de prueba, porque ese período dependerá de las características particulares del caso[77].

Nuestro Máximo Foro ha dejado meridianamente claro que, debemos considerar, conjuntamente, que **la medida severa de excluir del juicio el testimonio de un testigo crucial [o de un perito esencial], que es análoga a la medida extrema de la desestimación, sólo debe usarse en circunstancias excepcionales** [...]. *Valentín v. Mun. de Añasco*, 145 DPR 887, 895 (1998). En el citado caso, la Alta Curia indicó que **tales sanciones drásticas no son favorecidas judicialmente**. *Íd.* **Con este juicioso proceder, promovemos los valores superiores de la búsqueda de la verdad y la justicia en los procesos adjudicativos.** *Íd.*, pág. 897. **De igual forma, fomentamos la política judicial de que los casos sean**

---

El alcance del descubrimiento de prueba, a menos que sea limitado de algún modo por el tribunal, en conformidad con las disposiciones de estas reglas, será como sigue:
(c) *Persona Perita.* -El descubrimiento de prueba pericial podrá llevarse a cabo como sigue:
(1) Una parte podrá, a través de interrogatorios, requerir a cualquier otra parte que suministre el nombre y la dirección de las personas peritas que haya consultado y de las que intente presentar en el juicio. Respecto a estos últimos, podrá requerirse a la parte que exprese la materia sobre la cual la persona perita se propone declarar, así como un resumen de sus opiniones y una breve expresión de las teorías, los hechos o los argumentos que sostienen las opiniones. A solicitud de parte, el tribunal podrá ordenar el descubrimiento de prueba pericial por cualquier otro medio, sujeto a aquellas condiciones o limitaciones que estime razonables.

[76] 32 LPRA Ap. V., R. 23.1 (c)
[77] J Echevarría Vargas, *Procedimiento Civil Puertorriqueño,* 1ra. ed., Colombia, 2012, pág. 170.

**ventilados en los méritos.** *Íd.* Véase, también, Cuevas Segarra, *op. cit.*, pág. 1118. *Rivera et al. v. Arcos Dorados et al.*, supra, págs. 206-207. (*Énfasis suplido*).

### C. Deferencia al foro primario en el manejo del caso

Según es sabido, los tribunales apelativos "no debemos intervenir con las determinaciones de los juzgadores de primera instancia, salvo que medie pasión, prejuicio, parcialidad o error manifiesto". *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007); *Santiago Ortiz v. Real Legacy et al.*, 206 DPR 194, 219, (2021); *Rodríguez et al. v. Hospital et al.*, 186 DPR 889, 908-909 (2012); *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009); *Ortiz Ortiz v. Medtronic*, 209 DPR 759, 778 (2022).

No obstante, "la tarea de determinar cuándo un tribunal ha abusado de su discreción no es una fácil. Sin embargo, no tenemos duda de que el adecuado ejercicio de discreción judicial está estrechamente relacionado con el concepto de razonabilidad". *SLG Zapata-Rivera v. J.F. Montalvo*, 189 DPR 414, 434-435 (2013). Es por lo que, nuestra más Alta Curia ha definido la discreción como "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". *IG Builders et al. v. BBVAPR*, 185 DPR 307, 338 (2012). Así, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". **Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho".** (Citas omitidas). *SLG Zapata-Rivera v. J.F. Montalvo*, supra, pág. 435.

Es correcto que los tribunales de instancia poseen el poder inherente para vindicar la majestad de la ley y para hacer efectiva su jurisdicción, pronunciamientos y órdenes. El efectivo funcionamiento de nuestro sistema judicial y la rápida disposición de los asuntos litigiosos, requieren que los jueces de instancia tengan gran flexibilidad y discreción para lidiar con el diario manejo y tramitación de los asuntos judiciales. Es por ello que a éstos se les ha reconocido poder y autoridad suficiente para conducir los asuntos litigiosos ante su consideración y para aplicar correctivos apropiados en la forma y manera que su buen juicio les indique. (Citas omitidas). *In re Collazo I,* 159 DPR 141, 150 (2003). Ahora bien, el Tribunal Supremo de Puerto Rico ha indicado que no intervendrá con dicha facultad de los tribunales de instancia, "excepto cuando sea absolutamente necesario con el propósito de evitar una flagrante injusticia". *Pueblo v. Vega, Jiménez,* 121 DPR 282, 287 (1988).

### III

Al revisar el tracto procesal del caso, esta Juez no alberga duda alguna que el foro primario se excedió de su discreción al eliminarle a la parte peticionaria la prueba pericial que esta se proponía utilizar, sin que mediara una justificación para ello y sin haber impuesto antes sanciones o medidas menos drásticas.

Tal y como fue esbozado previamente, la discreción se "nutr[e] de un juicio racional apoyado en la razonabilidad y fundamentado en un sentido llano de justicia; no es función al antojo o voluntad de uno, sin tasa ni limitación alguna". **Ello "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho".**

Por todo lo anteriormente expresado, esta Juez considera que, al denegar el recurso, la Mayoría de este Panel no hace otra cosa, sino perpetuar una injusticia. Ello, en total desapego de lo resuelto por nuestra última instancia judicial, respecto a la controversia que nos ha sido planteada. Por tal razón, esta Juez disiente.

**GLORIA L. LEBRÓN NIEVES**
Juez de Apelaciones